Grant H. Goodman (SBN: 009463)
**GOODMAN, PLLC**
Anchor Centre West Wing
2201 East Camelback Road, Suite 350
Phoenix, Arizona 85016
Phone: (602) 955-0208
granthgoodman@msn.com
Attorneys for Plaintiffs Summit

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JEFFREY C. STONE, INC. d/b/a SUMMIT BUILDERS CONSTRUCTION COMPANY, an Arizona Corporation, | ) Civil Action No.: ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) |
| GREENBERG TRAURIG, LLP, a New York Limited Liability Partnership; DECONCINI MCDONALD YETWIN & LACY, PC; HIRSCH & SHAH, CPA'S, LLC, an Arizona Limited Liability Corporation; MAYER HOFFMAN MCCANN P.C., an Arizona Professional Corporation; MCA FINANCIAL GROUP, LTD.; CBIZ ACCOUNTING, TAX & ADVISORY SERVICE, LLC; SMC REVOCABLE TRUST; ESTATE OF SCOTT M. COLES; SCOTT COLES TRUST; VENTO REVOCABLE FAMILY TRUST; ZELEZNAK FAMILY TRUST; TODD AND JANE DOE BROWN, husband (executive officer of operations of Mortgages Ltd.) and wife; FRANCINE COLES, an individual; ASHLEY COLES, an individual; MIKE AND JANE DOE | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**COMPLAINT**

(I)   Federal RICO Claim  18 USC § 1961, *et seq.* /Arizona Racketeering Act ("AzRac") A.R.S. § 13-2314.04(A); 13-2310;

(II)  Federal Securities Fraud 28 U.S.C. § 1658(b) SOX;§18(b) (4)(d), National Securities Markets Improvement Act of 1996 ("NIMSA");

(III) Breach of Contract/Breach of Covenant of Good Faith and Fair Dealing;

(IV)  42 U.S.C. 1983 (Civil Rights);

(V)   Uniform Fraudulent Transfer Act;

(VI)  Legal Malpractice/Accounting Malpractice/Breach of Fiduciary Duty

**JURY TRIAL DEMANDED**

1

DENNING, husband (President of
Mortgages Limited) and wife; GEORGE
AND JANE DOE EVERETTE, husband
(VP and CIO for Mortgages Limited) and
wife; THOMAS AND JANE DOE
HIRSCH, husband (Co-owner of Radical
Bunny) and wife; LAURA AND JOHN
DOE MARTINI , husband and wife
(President of Mortgages Limited);
CHUCK AND JANE DOE McCLANE,
husband (Mayer's accountant for
Mortgages Limited) and wife;
CHRISTOPHER AND JANE DOE
OLSON, husband (CFO of Mortgages
Limited) and wife; HARISH AND JANE
DOE SHAH, husband (Co-owner of
Radical Bunny) and wife; PHILLIP AND
JANE DOE SOLOMI, JR., husband
(Executive Officer of Mortgages Limited)
and wife; JONATHAN AND LORI
VENTO, husband (Owner of Grace) and
wife; HOWARD AND JANE DOE
WALDER, husband (Co-owner of
Radical Bunny) and wife; NECHELLE
AND JOHN DOE WIMMER, husband
and wife (VP of Mortgages Limited);
DONALD AND SHIRLEY ZELEZNAK,
husband and wife (Co-owners of Grace);
RYAN AND JANE DOE ZELEZNAK
(Co-owners of Grace), husband and wife;
DOES I through X; ABC
CORPORATIONS I through X and
BLACK AND WHITE PARTNERSHIPS
I through X; LAW FIRMS I through V;
and ACCOUNTING FIRMS I through V,

Defendants.

2

Plaintiff Jeffrey C. Stone, Inc. d/b/a Summit Builders Construction Company ("Summit"), for its Complaint against Defendants, and each of them, alleges as follows:

## SUMMARY OF COMPLAINT

Defendants, and each of them, jointly and severally, liquidated cash, assets, and marketable securities to themselves in the amount of $32,903,569.00, while contractual debt to Summit went unpaid in the amount of $9,667,995.37. Summit had contracted with Defendants on (a) Ten Lofts on April 24, 2006; (b) Hotel Monroe on or about May 11, 2007. Summit's contract damages together with interest through Nov. 20, 2009, are at least $9,667,995.37 as stated above. Defendants, while owing Summit liquidated debt together with accruing interest, instead paid themselves $32,903,569.00, also as stated above.

The following reflects: Defendant law firm Greenberg Traurig transferred or otherwise paid itself $2,000,000.00; the DeConcini law firm transferred or otherwise paid itself $750,000.00; MCA transferred or paid itself $725,000.00; The Coles' trusts transferred or otherwise paid themselves $15,266,502.00; Brown liquidated $215,000.00; Denning transferred or otherwise paid himself $729,093.00; Everette transferred $178,461.00; Hirsch took Summit cash in the amount of $959,143.00; Martini transferred or otherwise paid herself $1,578,661.00; Olson transferred $163,461.00; the Shah family transferred or otherwise paid themselves $5,159,618.00; Solomi transferred to himself $1,856,433.00; Hirsch & Shah extricated $3,219,314.00; and Wimmer converted $102,883.00.

The above funds were transferred or otherwise taken by Defendants within a twelve month period and concurrently with the debt owed Summit. Defendants believed, wrongly, that these fraudulent transfers, while the debtor banks and feeder hedge funds which they ran were in the zone of insolvency, would defeat the Summit debt, due and owing within the exact same time frame. Defendants, however, owed, and

continue to owe to Summit direct fiduciary duties preserving its creditor cash and assets. The Defendants, collectively, and interdependently acted as a criminal syndicate.

Defendants, jointly and severally, diverted funding for the Summit projects known as: (i) Hotel Monroe, (ii) Ten Lofts. Defendants, collectively, drove the primary obligors into insolvency. Defendant lawyers, Greenberg Traurig LLP and DeConcini McDonald Yetwin & Lacy, P.C., together with accounting fiduciaries MCA Financial Group, Ltd., Hirsch & Shah, CPA'S, LLC, and CBIZ Accounting, Tax & Advisory Service, LLC, directed Defendant's conduct, asset transfers, and tacitly approved all above referenced cash transfers.

Defendants' joint and several conduct has damaged Summit, contractually, for principal debt and interest through November 20, 2009, in the amount of $9,667,995.37.

While Summit and its subcontractors continued to perform work on the projects, Defendants (and their directors, accountants, executive officers, and legal representatives) were made aware of ongoing insolvency issues. Defendants, and each of them, were aware of, and refused to act, in payment of Summit debt due in the ordinary course.

Summit has been contractually damaged in the amount of $9,667,995.37. Those damages are trebled under federal and state RICO and securities fraud statutes to $29,003,986.11. Summit lost an additional $150 million in bonding capacity resulting from Defendant's concerted conduct. Punitive damages are sought in an amount of three times the underlying compensatory damages.

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Summit Builders ("Summit"), is a lawfully formed Arizona corporation in good standing and duly licensed to conduct business within the state of Arizona. Its license numbers are ROC068507 and ROC073472.

4

2.     Defendants Estate of Scott M. Coles ("Coles Estate") is the estate of Scott M. Coles ("Coles"), the deceased former Chief Executive Officer of Mortgages Ltd. Coles was a citizen and resident of Maricopa County.     Mr. Coles withdrew $1,533,792.00 in the year and a half prior to this cause of action.

3.     Defendants Scott Coles Trust and S.M.C. Revocable Trusts ("Coles Trusts") are the trusts in which Coles held diverted assets belonging to Summit. Coles Trust has their principal places of business in Maricopa County. S.M.C. Revocable Trust diverted Summit debt in the amount of $13,732,710.31 in the year and a half prior to this cause of action. This conduct, transferring cash, assets and marketable securities foreseeably damaging Summit involving a pattern of racketeering activity.

4.     Defendant Ashley Coles, was at all times material hereto, the wife of Coles.     Defendant Ashley Coles is joined for purposes of establishing marital community liability.   Defendant Ashley Coles is a citizen and resident of Maricopa County.

5.     Defendant Francine Coles was the first wife of Coles and a beneficiary under Coles' will.

6.     Defendant Greenberg Traurig ("Greenberg Traurig") directed and oversaw Defendants' regulated securities offerings, enriching all defendants and itself, attracting more "investors" in what was known by the lawyers as a classic "Ponzi scheme." Greenberg Traurig enriched itself at the expense of Summit reaping approximately $2 million in legal fees related to Defendants' collective "representation."     (Plaintiff incorporates by reference the Statement of Affairs for case numbers 2:08-bk-07465-RJH

and 2:08-bk-13884-CGC and outstanding "professional fee" requests in bankruptcy case numbers 2:08-bk-07465-RJH and 2:08-bk-13884-CGC).

7.     Defendant DeConcini McDonald Yetwin & Lacy ("DeConcini Firm") directed and oversaw Defendants' regulated securities offerings, enriching all defendants and itself, attracting more "investors" in what was known by the lawyers as a classic "Ponzi scheme." DeConcini enriched itself at the expense of Summit reaping approximately $750,000 in legal fees related to Defendants' collective "representation." (Plaintiff incorporates by reference the Statement of Affairs for case numbers 2:08-bk-07465-RJH and 2:08-bk-13884-CGC and outstanding "professional fee" requests in bankruptcy case numbers 2:08-bk-07465-RJH and 2:08-bk-13884-CGC).

8.     Defendant Laura Martini acted as an executive officer of the primary debtor and withdrew $1,578,661.94 in the year and a half prior to this cause of action taking payment to herself at the expense of Summit. (Plaintiff incorporates by reference the Statement of Affairs for case numbers 2:08-bk-07465-RJH and 2:08-bk-13884-CGC).

9.     Defendant George Everette acted as an executive officer of the primary debtor and withdrew $178,461.40 in the year and a half prior to this cause of action taking payment to himself at the expense of Summit.   (Plaintiff incorporates by reference the Statement of Affairs for case numbers 2:08-bk-07465-RJH and 2:08-bk-13884-CGC).

10.     Defendant Christopher Olson acted as CFO of the primary debtor and withdrew $163,461.40 in the year and a half prior to this cause of action taking payment

to himself at the expense of Summit. (Plaintiff incorporates by reference the Statement of Affairs for case numbers 2:08-bk-07465-RJH and 2:08-bk-13884-CGC).

11.     Defendant Nechelle Wimmer acted as Vice President of the primary debtor and withdrew $102,883.46 in the year and a half prior to this cause of action taking payment to herself at the expense of Summit. (Plaintiff incorporates by reference the Statement of Affairs for case numbers 2:08-bk-07465-RJH and 2:08-bk-13884-CGC).

12.     Defendant Phillip Solomi, Jr. acted as an executive officer of the primary debtor and withdrew $1,856,433.77 in the year and a half prior to this cause of action liquidating payment to himself at the expense of Summit. (Plaintiff incorporates by reference the Statement of Affairs for case numbers 2:08-bk-07465-RJH and 2:08-bk-13884-CGC).

13.     Defendant Todd Brown acted as Vice President of Operations of the primary debtor and withdrew $215,000.04 in the year and a half prior to this cause of action liquidating payment to himself at the expense of Summit. (Plaintiff incorporates by reference the Statement of Affairs for case numbers 2:08-bk-07465-RJH and 2:08-bk-13884-CGC).

14.     Defendant Todd Brown, after draining the primary debtor of $215,000.04 prior to these proceedings, migrated to Defendant MCA Financial Group to serve as its Senior Managing Director to further drain the assets of the primary debtor in the amount of several hundreds of thousands more dollars. For example, Defendant MCA Financial Group liquidated unto itself an additional $225,000 for a two week period from June 9

through June 23, 2008. MCA has continued to liquidate cash and assets to itself in an amount exceeding $500,000 in addition to the $225,000 it received pre-petition.

15. Defendant Mike Denning acted as President of the primary debtor and withdrew $729,093.90 in the year and a half prior to this cause of action liquidating payment to himself at the expense of Summit. (Plaintiff incorporates by reference the Statement of Affairs for case numbers 2:08-bk-07465-RJH and 2:08-bk-13884-CGC)

16. Defendant Hirsch & Shah, CPA's, LLC ("Hirsch & Shah") provided services for Defendants as auditors and financial advisers. Hirsch & Shah as auditors transferred money to themselves in the amounts of: $896,174.05 on April 11, 2008; $206,463.06 on April 23, 2008; $896,174.05 on May 15, 2008; $241,321.89 on May 20, 2008; and $979,181.67 on May 28, 2008. In summary, Hirsch & Shah transferred $3,219,314.72 to themselves in a month and a half. All amounts described herein were approved and ratified by Defendant lawyers, Defendant law firms, Defendant accountants, Defendant executive officers, Defendant board members, Defendant fiduciaries and Defendant ownership.

17. Defendant Mayer Hoffman McCann audited Defendants, recognized, and ratified all of the above and below cash and asset transfers to or for the benefit of Defendants to the detriment and debt owed Summit.

18. Defendant Chuck McClane was a partner of Mayer Hoffman McCann at all relevant times, audited the books of accounts and records, and prepared financial statements within 24 months of the pending action.

19.    Defendant CBIZ Accounting, Tax & Advisory Services ("CBIZ") audited Defendants, recognized, and ratified all of the above and below cash and asset transfers to or for the benefit of Defendants to the detriment and debt owed Summit.

20.    Defendant MCA Financial Group audited Defendants, recognized, and ratified all of the above and below cash and asset transfers to or for the benefit of Defendants to the detriment and debt owed Summit.

21.    Within a twelve month period, spanning October 21, 2007 through September 6, 2008, Defendant Thomas Hirsch acted as an executive officer of the primary debtor and diverted to himself cash and assets in the amount of $959,143.61 to the detriment of Summit.  (Plaintiff incorporates by reference the Statement of Affairs for case numbers 2:08-bk-07465-RJH and 2:08-bk-13884-CGC).

22.    Defendants Howard and Berta Walder were managing members of the primary debtor and oversaw and approved all of the above and below cash and asset transfers to or for the benefit of Defendants to the detriment and debt owed Summit.

23.    Defendant Harish Shah was a member of one of the primary debtors. Transfers to Shah and relatives within eighteen months of this cause of action totaled $5,159,618.40. (Plaintiff incorporates by reference the Statement of Affairs for case numbers 2:08-bk-07465-RJH and 2:08-bk-13884-CGC).

24.    Defendants Jonathon Vento and Lori Vento own Vento Investments, LLC, and Defendant Vento Revocable Family Trust which served as a shelter for the assets held by Defendants Jonathon and Lori Vento.

25.     Defendants Donald J. Zeleznak and Shirley Zeleznak are owners of Zeltor, LLC.  Defendant Ryan Zeleznak is member of RJZ Associates.

26.     Defendants ABC Corporations I through X, Black and White Partnerships I through X, Law Firms I through V, and Accounting Firms I through V ("ABC Entities") are corporations, trusts, limited liability companies, partnerships or other business entities whose true identities are presently unknown.  Defendant ABC Entities participated in the events giving rise to Summit's claims and are liable therefore.  Summit will seek leave to amend to identify Defendant ABC Entities specifically when their identities are ascertained.

27.     All named Defendants ("Defendants") are interrelated and interdependent and are jointly and severally liable.

## **JURISDICTION**

28.     This Court has federal question jurisdiction under the Constitution, laws, or treatises of the U.S. pursuant to Sarbanes-Oxley Act, 28 U.S.C. § 1658(b); 28 U.S.C. § 1331; 28 U.S.C. § 1334(e)(1)(2), and to the extent asserted, supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Jurisdiction is also premised on 28 U.S.C. § 1337 and 28 U.S.C. § 1343.

29.     Claims arising under 42 U.S.C. § 1983 are governed under state law (Arizona, 2 years).  The statute of limitations, however, for accrual purposes, is controlled under federal law. This includes equitable tolling and/or tolling of the statute for fraudulent concealment.  Subject matter jurisdiction exists under 28 U.S.C. §1343 (a)(4).

30. This court has federal question jurisdiction over this cause of action, *sua sponte,* under principles enunciated in *In re Intermagnetics America, Inc.,* 926 F.2d 912 (9th Cir. 1991); *Landis Revin Neutraceuticals v. Arthur Medical,* 2007 WL 397144 (E.D.Cal.); *Dixon v. C.I.R.,* 316 F.2d 1041 (9th Cir. 2003); *U.S. v. Arias-Villaneuva,* 998 F.2d 1491 (9th Cir, 1993); 18 U.S.C. §1621(1).

31. Venue is proper under 28 U.S.C. §§1391, 1401, together with statute specific venue provisions applicable to the courts enumerated below, including, but not limited to violations under §1983.

32. Original or exclusive jurisdiction of the Federal District Court, which relates to bankruptcy abridgement or modification of substantive rights, exists under 28 U.S.C. § 2075.

33. The District Court has original jurisdiction over non-core bankruptcy conduct and infringement causing Summit's damages pursuant to 28 U.S.C. § 1334(a),(b),(d),(e)(2); 28 U.S.C. § 1361; 28 U.S.C. § 157(b)(4),(d),(e).

34. Summit will not agree to have any of these non-core events, conduct, or issues addressed by the bankruptcy court.

## **OPERATIVE FACTS**

35. Plaintiff has named the responsible directors, officers, accounts, lawyers and responsible fiduciaries, individually, and when appropriate in their corporate capacity.

36. Discussed above are fraudulent transfers totaling $32,903,569.00. The transfers of cash and assets preliminarily and directly benefited Defendant lawyers,

accountants and defendants individually at the expense of debt due and owing to Summit.

37.     For example, Todd Brown liquidated to his benefit at least $215,000.00 as described above, while the primary obligor bank was definitionally insolvent under the Arizona Corporation Commission Code.

38.     Brown then joined Defendant MCA Financial in an effort to fleece the insolvent bank for hundreds of thousands of dollars in consulting fees for his direct benefit and at the expense of Summit.

39.     Summit contracted with defendants Vento and Zeleznak and the primary debtor bank as well as its feeder hedge funds on: (a) Ten Lofts on April 24, 2006; (b) Hotel Monroe on or about May 11, 2007. Summit's contract damages together with interest through Nov. 20, 2009, are at least $9,667,995.37 plus accruing interest at the default rate of 18% per annum.

40.     Defendant Greenberg Traurig liquidated approximately $1 million to itself from financially insolvent debtors throughout 2008. The Deconcini Firm orchestrated the transfer of at least $750,000.00 throughout 2008-2009. This conduct has continued unabated to the filing of this complaint. Due to the fiduciary duties owed directly to Summit defendant law firms have improperly and directly enriched themselves in amounts due and owing to Summit.

41.     Defendant Hirsch & Shah controlled, diverted and otherwise secured for its own benefit amounts exceeding $3,219,314.72. Hirsch & Shah are charged with the liquidation of creditor funds to itself in the above described amounts, which comprise a

fraction of Hirsch and Shah's true involvement. The above amounts were transferred in a month and a half from April 11, 2008 through May 28, 2008. Under the below counts, the relevant timeframes at issue are ongoing through the service date of this complaint. The actual timeframe for discoverable conduct supporting this complaint dates back, minimally, to 2005.

42.     Defendants   Mayer   Hoffman   McCann   P.C.   (hereinafter   "Mayer Hoffman"),   Chuck McClane (hereinafter "McClane"),   MCA Financial Group, LTD. (hereinafter "MCA"), and CBIZ Accounting, Tax and Advisory Service, LLC (hereinafter "CBIZ") audited, investigated, ratified, and authorized, as licensed Arizona accounting professionals, transfers and assets to themselves in amounts believed to exceed $1 million.     They approved, jointly and severally, financial legerdemain exceeding the above described $32,903,569.00 for just 2007 and 2008 alone.   It is reasonably anticipated that this conduct has continued, and continues unabated, exceeding $100,000,000.00 in improper withdrawals for the years 2005, 2006, 2007 through and including 2009 to the date of this complaint.

43.     Defendant Coles Trusts, as with defendants in general, and with the approval and direction of the defendant lawyers, defendant accounting firms, defendant executive officers and defendant board members, liquidated at least $13,732,710.31 from the primary debtors primarily during 2007 through 2008. These amounts will exponentially increase once 2005, 2006, and 2007-2009 are aggregated.

44.     Defendants Vento and Zeleznak paid or otherwise transferred to themselves bank funds earmarked for payment to Summit. Properties owned or

controlled by Defendants Vento/Zeleznak absorbed the diverted funding including but not limited to: (a) "44th Street and Camelback" (parcel consolidation); (b) "The Portales Project"; (c) "The 44 Monroe Project". Simply, rather than ensure payment to Summit and its subcontractors, for work performed, Defendants, and each of them, diverted for their own pecuniary gain assets, cash and debt owed to Summit.

45.     Defendant Francine Coles was named as the sole beneficiary under the will of Scott Coles and trusts and has received benefits from the ill gotten gains discussed herein.

46.     Defendants Denning, Everette, Hirsch, Martini, Wimmer, and Olson took for themselves (Denning - $729,093.90, Everette - $178,461.40, and Hirsch - $959,143.61, Martini - $1,578,661.94, Wimmer - $102,883.46, And Olson - $163,461.40).   Defendants functionally maintained their own private piggy bank to the financial detriment of senior creditor Summit.

47.     Defendants Shah (and family) diverted to themselves $5,159,618.40 within 18 months of this cause of action. These funds were and are Summit debt immediately due and owing.

48.     Defendant Solomi liquidated $1,856,433.77 within one year and a half prior to this cause of action.

49.     Defendants Walder, *et al.* were, and remain, beneficiaries of asset transfers and cash owed plaintiff in amounts to be determined.

14

## COUNT I

## Federal Rico/Arizona Racketeering Act

50.     Summit incorporates each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

51.     The RICO statutes create a private cause of action.   Racketeering means, in part, any act, "including any preparatory or completed offense" that includes "[a]ny of the following acts if committed for financial gain . . . [a] scheme or artifice to defraud."   For example in the present case defendants expressly drained all financial liquidity to the intentional detriment of primary creditor Summit, "in preparation or for completion of conduct committed for financial gain."     Transferring, concealing, and dissolving in excess of $32 million in cash, run by the lawyers, administered by the accountants, and approved by the defendant executive officers and board members is a "scheme or artifice to defraud."

52.     Conduct described is classic "predicate acts" which may or may not be directly related to the instant proceedings. *See, Bridge v. Phoenix Bond & Indem. Co.*, 128 S.Ct. 2131, 2145 (2008).

53.     A conspiracy to commit perjury falls within RICO and can be subsumed under RICO "scheme or artifice to defraud" language. *C.f. Franzi v. Koedyker*, 157 Ariz. 401, 406, 758 P.2d 1303, 1308-09 (App. 1985); *Darragh v. Superior Court*, 183 Ariz. 79, 900 P.2d 1215 (App. 1995) (approving AzRac counts premised upon conspiracy to commit perjury as actionable conduct consistent with federal civil rights claims and the private right of action for enforcement and liability arising out of

criminal predicate acts, such as perjury).   For example, and pursuant to 28 U.S.C. §1746 defendants knowingly filed materially misleading "affidavits" as officers of the court obscuring the true state of financial affairs. Specifically, Greenberg Traurig filed affidavit upon affidavit in federal court failing to disclose approximately $750,000 it had reaped from defendants while the bank was functionally insolvent.   In another example, the Deconcini Firm intentionally "coded", without specifying the parties to whom funds were diverted as part of its "Statement of Financial Affairs."   The document filings are not consistent with, nor appropriate under, the Bankruptcy Crime Statutes 18 U.S.C. §152, *et seq*. Defendants acted in concert, as a criminal syndicate, to intentionally damage Summit.

54.    The fact that employees, officers, directors, lawyers and accountants engaged in the activity at different times does not defeat the continuity requirement.[1]

## COUNT II

### Federal Securities Fraud

55.    Summit incorporates each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

56.    Defendant lawyers wrote, ratified, and directly participated in issuing registration exempt regulated securities to effectuate the Ponzi scheme.   Defendant lawyers and accounting fiduciaries obscured the scheme and artifice to defraud creditors and/or investors.

---

[1] *United States v. Cagnina*, 697 F.2d 915, 921 (11th Cir. App. 1983).

16

57. Pursuant to the Private Securities Litigation Reform Act, Rule 10(b)-5, Summit brings this Complaint against Defendants related to their purchase and sale of regulated securities. Defendants were each primary actors, in either purchasing or selling the securities. Defendants exercised that degree of autonomy, control, and behavior in the sale and purchase of the securities at issue constituting primary liability. Defendants, and each of them, attempted to add to the financial veneer of stability which they knew, or reasonably should have known, was misleading and deceptive. At insolvency, defendants owed plaintiff direct fiduciary duties related to these regulated securities and were required to hold in trust and protect for the benefit of Summit, at least $9,000,000.00.

58. Defendants sold the securities directly, were responsible for execution of all contracts related thereto, and were responsible for ensuring the integrity of the offerings, including, but not limited to: (a) Subscription Agreements; (b) Operating Agreements; (c) Prospectus Agreements; (d) Accredited Investor Agreements; (e) Trust Agreements; (f) Security Agreements; (g) Credit Agreements; (h) Guarantor Agreements; (i) Notes; (j) and other associated Agreements.

59. Defendants negotiated the sale of the restricted securities. Defendants acted in concert with Greenberg Traurig to promote and conduct the sale of such securities.

60. Greenberg Traurig portrayed Defendants as solvent when in fact Defendants were functionally insolvent while the "Ponzi" scheme was literally coming apart at the seams.

61.     The insolvency of the primary debtors was concealed by Defendants until June 2008, and October 2008.

62.     Primary actor and "control person" liability is assigned to all defendants engaging in the conspiracy, whether Bank, lawyers, accountants, executive officers, board members, interest holders, "feeder" funds or sham companies. § 78t(a); A.R.S. § 44-1991.

63.     Defendants have collectively conspired over several years to conceal and/or intentionally destroy evidence of fraud. The conduct is at a minimum, conscious recklessness, and more properly classified as maliciously intentional.

64.     Greenberg Traurig, and all other lawyers directly involved, knew the contents of the securities contracts. The documents absolutely prohibited the conduct at issue. The lawyers, as Defendants' representatives, read and thoroughly understood the agreements prohibiting the fraudulent concealment and activities at issue.

65.     The applicable statute of limitation arises under the Sarbanes-Oxley Act, 28 U.S.C.S. § 1658(b). Pursuant to this statute a claimant can bring a cause of action within five years of the violation or two years from discovery, whichever is earlier.

66.     The transactions at issue here are registration-exempt "covered securit[ies]. . . pursuant to [SEC] rules or regulations issued under [§ 4 of the Securities Act]".     National Securities Markets Improvement Act of 1996 ("NIMSA"), § 18(b)(4)(D).

67.     The above-mentioned limitation periods apply to any "private right of action that involves fraud, deceit, manipulation, or contrivance in contravention of a

regulatory requirement concerning the securities laws . . . ." See 28 U.S.C.S. § 1658(b) as amended July 2002, The Sarbanes-Oxley Act of 2002.

68.     In this case Defendants failed to comply with several federally-mandated reporting requirements. (*See*, n.3, *infra*.)

## COUNT III

### Breach of Contract/Breach of the Covenant of Good Faith and Fair Dealing

69.     Summit incorporates each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

70.     Plain, clear and unambiguous contracts may not be reformed, modified or subject to extrinsic evidence in derogation of the contract terms. *Grubb & Ellis Mgmt. Services Inc., v. 407417 B.C., L.L.C.*, 213 Ariz. 83, 138 P.3d 1210 (App. 2006); *Pinnacle Peak Dev. v. TRW Inv. Corp.*, 129 Ariz. 385, 631 P.2d 540 (App. 1980). The contracts referenced above are not in dispute nor are their terms and conditions of payment.

71.     Defendants' breach of the contract, contract repudiation, anticipatory repudiation and bad faith performance under the agreements damaged Summit in amounts previously discussed.

72.     The Agreements, payment schedules and all relevant addenda are incorporated herein by this reference.

73.     Summit fully performed the agreements at issue.

74.     Breaches of the payment schedules amount to at least $9,667,995.37.

75.     Defendants operate as an interlocking directorate, act in concerted fashion to conceal finances and have transferred, distributed or otherwise caused assets of the underlying debtors to be unlawfully conveyed to themselves, affiliates, successor companies, affiliated officers, directors, sister companies, relatives, agents, and/or subsidiaries in breach of the above enumerated Agreements, and in bad faith.

76.     "Arizona law implies a covenant of good faith and fair dealing in every contract." *See Wells Fargo Bank v. Ariz. Laborers*, 201 Ariz. 474, 490, 38 P.3d 12, 28 (2002). "The implied covenant of good faith and fair dealing prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement," and allows recovery in both tort and contract. *Id.*   To recover in tort only, Summit need only prove a fiduciary duty on the part of Defendants. *Id.*

77.     Defendants owe Summit a fiduciary duty as a creditor when Defendants entered the zone of insolvency. *See A.R. Teeters & Associates, Inc. v. Eastman Kodak Co.*, 172 Ariz. 324, 329, 836 P.2d 1034, 1039 (App. 1992); A.R.S. § 10-002(12).

78.     Because of Defendants' conduct, specifically, failure to perform in accordance with the terms of the Agreements, when a fiduciary duty existed, Defendants' prohibited Summit from receiving the benefit of the bargain under both contract and tort theories.

## COUNT IV

### Civil Rights Violations
### 42 U.S.C. §1983

79.     Summit incorporates each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

80.     Defendants have used the state and federal courts generally simulating process to mask their own conduct.

81.     Defendants sought to unilaterally deprive plaintiffs of their constitutional due process rights by stripping away Summit cash, assets, credit, and private property interests, under color of state law, using their law licenses to improperly obtain financial advantage under false pretense.

82.     Once defendants, and each of them, as officers of the court, sought to act without legal authority, or in excess of authority granted them as licensees enlisting governmental agencies, courts, judges, commissioners, and law enforcement, the acts of the individuals crossed the line from private enterprise to outright fraud in the procurement of judicial orders in contempt of 42 U.S.C. §1983. A law license is not a vehicle immunizing the license holder from its prohibited use. Defendants have acted with the intent to hinder, obstruct, and/or evade culpability for their prohibited joint conduct under color of state law.[2]

_____

[2] In *Lugar v. Edmondson,* 457 U.S. 922 at 924, 102 S.Ct. 2744, 73 L. Ed. 2d 482, the Court held that the private defendants who had initiated the attachment process could be liable as state actors for "participating in the deprivation": "Invoking the aid of state

## COUNT V

### Breach of the Uniform Fraudulent Transfer Act (UFTA)
### A.R.S. §44-1001 *et seq.*

83.     Summit incorporates each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

84.     Liability under the Uniform Fraudulent Transfer Act (hereinafter "UFTA") exists where "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or

---

officials to take advantage of state-created attachment procedures" made the private defendants "*willful participants in joint activity* with the State or its agents." *Id. at 942.* *See Lugar,* 457 U.S. at 941 ("We have consistently held that private party joint participation with state officials in the seizure of private property is sufficient to characterize the party as a 'state actor.'"); *see also Dennis v. Sparks,* 449 U.S. 24, 27-28, 66 L.Ed. 2d 185, 101 S. Ct. 183 (1980) ("Private persons, jointly engaged with state officials in the challenged action are action... 'under color' of law for purposes of §1983 actions."); *States v. Price,* 383 U.S. 787, 794, 16.L Ed. 2d 267, 86 S. Ct. 1152 ("private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of this statute To act "under color" of law does not require that the accused be an officer of the State.  It is enough that he is a willful participant in joint activity with the State or its agents."); *Fonda v. Gray,* 707 F.2d 435,437 (9th Cir. 1983) ("A private party may be considered to have acted under color of state law when it engages in a conspiracy or acts in concert with state agents to deprive one's constitutional rights.").

obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." A.R.S. § 44-1005 (2009).

85. Liability under UFTA exists where the debtor entity, board members, officers, directors and shareholders have effectively "merged" or have been absorbed by a "successor" company; and/or where the debtor entity which seeks to escape its debt exists as a mere reincarnation of its former self. *Id.*

86. Cash transfers, wire transfers, or conveyances of any kind or nature to Summit's detriment are prohibited. Such acts amount to a breach of corporate responsibility and fiduciary duty to creditors generally and Summit specifically. In addition, such conduct is a fraudulent conveyance under the UFTA.

87. Defendants' actions were taken to "hinder, delay, or defraud" Summit as defined under Arizona law. Summit is pursuing both intentional fraudulent transfers under A.R.S. § 44-1004(A)(1), and constructively fraudulent (non-intent) transfers under A.R.S. § 44-1004(A)(2), A.R.S. § 44-1005, A.R.S. § 44-1008(A).[3]

_____

[3] The issues at bar are governed by the Office of the Comptroller of the Currency ("OCC"), the FDIC, the Sarbanes-Oxley Act of 2002 ("SOX"), the Federal Accounting Standards Board ("FASB"), regulations promulgated under the SEC, GAAP, "RAP" (regulatory accounting principles), Banking Bulletin 93-60 "Interagency Policy Statement On The Allowance For Loan And Lease Losses", 1993 WL 542562 (O.C.C.), 93-37 "Interagency Guidance On In-Substance Foreclosures And Nonaccrual Loans, 1993 WL 226004 (O.C.C.), 12 C.F.R. § 723.14 (loan classification), FASB #5 (accounting for contingencies and accrual for loss reserves), FASB #15(troubled debt restructuring), FASB #114 (impairment of collateral, loan), FASB #118 (income recognition and disclosure requirements for impaired loans), FASB #121 (impairment of long lived assets, 12 U.S.C. § 24 (prohibition of national banks holding equity in client property).

23

## COUNT VI

### Legal Malpractice/Accounting Malpractice/Breach of Fiduciary Duty

88.     Summit incorporates each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

89.     Greenberg Traurig, the Deconcini Firm and/or other unknown attorneys representing Defendants ("Attorneys") owed a direct fiduciary duty to Summit for its failure to report and/or intentionally conceal the true state of Defendants' financial affairs. Attorneys' fraudulent financial misrepresentations on Defendants' behalf had the intended effect of hindering, delaying and obstructing Summit's debt. The duty owed Summit is actionable irrespective of the Attorneys' adverse representation. *See, Paradigm Ins. Co. v. Langerman Law Offices, P.A.*, 200 Ariz. 146, 24 P.3d 593, 201 (2001); *See also, Associated Aviation Underwriters v. Wood*, 209 Ariz. 137, 98 P.3d 572 (Ct. App. 2004).

90.     Attorneys served as legal counsel for Defendants in the year preceding insolvency. The Attorneys' duties included adequate knowledge and fair representation to the court of the true financial status of the entities which the firms represent.

91.     Attorneys' failure to correct fraudulent financial reporting for the Defendants is, at a minimum, bankruptcy fraud, securities fraud, and direct participation in a *defacto* criminal syndicate defined within the RICO statutes.

92.     Attorneys' breach of their duty to accurately report their clients' financial schemes resulted in Summit's reliance on fraudulent filings when attempting to recoup payments for work on the Agreements.

93.     Evidence that Attorneys assisted and directed Defendants acts subject both Attorneys and Defendants to civil liability.  Summit may hold Attorneys jointly and severally liable. *See, Chalpin v. Snyder*, 220 Ariz. 413, 424 (Ct. App. 2008).

94.     Evidence that Summit was invited to rely on Attorneys' legal services in preparing Defendants' bankruptcy petition subject Attorneys to liability. *See, Kremser v. Quarles & Brady, L.L.P.*, 201 Ariz. 413, 418 (Ct. App. 2001).

95.     An attorney is liable for intentional misrepresentation or fraud.

96.     Attorneys in their capacity as legal counsel knew, or should have known, of any asset or cash transfers and/or concealment of property preceding the bankruptcy filing, thereby committing fraud upon the court.

97.     Evidence of Attorneys' suppression of material evidence amounts to concealment and intentional misrepresentation.

98.     Defendants MCA, CBIZ, Hirsch & Shah, Mayer, Hoffman & McCann are subject to the identical standards of fiduciary duty and breach detailed above.

99.     "Once a corporation becomes insolvent, the creditors join the class of persons to whom directors owe a fiduciary duty to maximize the economic value of the firm for the benefit of the firm's creditors." *See, A.R. Teeters*, 172 Ariz. at 331, 836 P.2d at 1041.

100.    Defendants continue to owe Summit a fiduciary duty to protect and preserve Defendants' assets, cash, cash equivalents, and income for the benefit of Summit.  Defendants, and each of them, have intentionally breached, and continue to breach those fiduciary duties.

101. This Complaint must be construed in its entirety. The Complaint should be considered as a unified whole, all paragraphs reincorporated by this reference.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff incorporates by reference all separately enumerated paragraphs in this matter into this Verified Complaint. Plaintiff respectfully requests the following:

1. Consolidation and reasonably immediate set aside, stay, nullification, enjoinment, and vacatur, of defendants' fraudulent transfers pursuant to A.R.S. §§ 44-1001-1010 (UFTA), together with damages awarded, or awardable, under the UFTA;

2. All allowable contract damages, statutory damages, and discretionary damages, attorneys' fees, costs and expenses, reasonably incurred in pursuit of this cause of action under applicable uniform, commercial, state and federal law, as well as, an award of reasonable attorneys' fees, costs, and expense associated with the underlying contract litigation. A.R.S. §§ 12-341.01, *et seq*. and 12-349; *Miscione v. Bishop*, 130 Ariz. 371, 374-375, 636 P.2d 149, 152-153 (App. 1981); <u>*See also*</u> RESTATEMENT (SECOND) CONTRACT § 355 (1981) (explaining that punitive damages may be recoverable for a breach of contract if the conduct constituting the breach is also a tort for which punitive damages are recoverable.)

3.     Treble Damages pursuant to Federal and State RICO and Securities Fraud Statutes.

4.     Contractual debt together with accruing interest at 18% per annum totaling: at least $9,667,995.37; Court Ordered disposition in amounts not less than $9,667,995.37 (trebled): $ 29,003,986.11; attorney fees, and punitive damages in a multiplier of three times the compensatory damages stated above.

5.     Reduced bonding capacity of $150,000,000.00.

6.     Contract damages, extra-contractual damages, damages for breach of the covenant of good faith and fair dealing, along with damage associated with the expense, cost and professional fees (attorney, expert and otherwise) incurred in the prosecution of this matter to be proven with sufficient particularity at trial;

7.     Punitive or Exemplary Damages to be proven at trial. A.R.S. § 29-1025 (2009); *see also* A.R.S. § 13-2314 (allowing punitive damages for racketeering, constructive trusts and fraud); *Rhue v. Dawson*, 173 Ariz. 220, 841 P.2d 215 (Ct. App. Div. 1 1992) (finding that Arizona law allows for punitive damages in a breach of fiduciary duty where the defendant's conduct reaches the requisite level of culpability.); *also see Western Coach Corp. v. Vaughn*, 9 Ariz. App. 336, 339, 452 P.2d 117, 120 (Ct. App. 1969) (allowing punitive damages for acts of corporate employees when committed in

furtherance of employer's interest); *Hyatt Regency Phoenix Hotel Co. v. Winston,* 907 P.2d 506 (Ct. App. 1995).

## JURY DEMAND

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED this 23rd day of November, 2009.

### GOODMAN, PLLC

By: s/ Grant H. Goodman #009463)
Grant H. Goodman
Attorneys for Plaintiff
Jeffrey C. Stone, Inc. d/b/a/
Summit Builders Construction Co.
The Anchor Centre (West Wing)
2201 East Camelback Road
Suite 350
Phoenix, AZ 85016
Phone: (602) 955-0208
granthgoodman@msn.com

Pursuant to A.R.S. 13-2314.04(h), Plaintiff hereby gives notice of the foregoing verified complaint and serves one copy on this 23rd day of November, 2009 to:

United States Attorneys' Office
Arizona Attorney General's Office
United States Department of Justice

s/ Grant H. Goodman

## VERIFICATION

**STATE OF ARIZONA**     )
                         )
**County of Maricopa**   )

Jeffery C. Stone, plaintiff in the above-entitled action, affirms that the contents of the above Verified Complaint are true, correct and faithful to the evidentiary record. This verification is knowingly submitted under penalty of perjury.   The factual averments of the Complaint were taken from the Agreements and from official and public records.  Documents of record have been incorporated by reference into this Complaint as substantive proof of the facts and allegations contained herein.  I have authorized submittal of this Complaint to the Department of Justice, US Attorneys' Office, and the Arizona Attorney Generals' Office.

DATED this 20th day of November, 2009.

_____
Jeffery C. Stone

SUBSCRIBED AND SWORN TO before me this 20th day of November, 2009 by Jeffery C. Stone.

_____
Notary Public

My Commission Expires

04-16-2011

OFFICIAL SEAL
SHEILA MAE CORPUZ
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires April 16, 2011