Grant H. Goodman (SBN 009463)
**GOODMAN PA**
**Anchor Centre West**
2201 E. Camelback Road, Suite 350
Phoenix, AZ  85016
Telephone:  (602) 955-0208
Fax: (602) 538-4357
ggoodman@goodmanattorneys.com
granthgoodman@msn.com

Attorneys for Plaintiff Summit

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JEFFREY C. STONE, INC. d/b/a SUMMIT BUILDERS CONSTRUCTION COMPANY, an Arizona Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>GREENBERG TRAURIG, LLP, et al.,<br><br>Defendants. | Case No.: 2:09-cv-02454-MHM<br><br>**OMNIBUS SUPPLEMENTAL FILING OF SEC TRANSCRIPT TESTIMONY OF DEFENDANTS PHILLIP SOLLOMI, LAURA MARTINI, MICHAEL DENNING, NECHELLE WIMMER, CHARLES MCLANE, AND GEORGE EVERETTE IN SUPPORT OF PLAINTIFF'S RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT FILED BY INDIVIDUAL DEFENDANTS** |

Summit Builders Construction Company, ("Plaintiff Summit"), gives notice of its Omnibus Filing of United States Security and Exchange Commission ("SEC") transcript testimony of Defendants Phillip Sollomi, Laura Martini, Michael Denning, Nechelle Wimmer, Charles McLane, and George Everette in support of "Plaintiff's Response to Motion to Dismiss Amended Complaint Filed by Individual Defendants" ("Plaintiff's Response to Individual Defendants' MTD"), (*See* DKT #107 filed in this action). Plaintiff supplements and incorporates by reference a partial copy of Michael

1

Denning's, Laura Martini's, Phillip Sollomi's, Nechelle Wimmer's, and Charles McLane's sworn testimony given before the United States Securities and Exchange Commission ("SEC") (Collectively referred to as the "SEC Transcripts") on August 28, 2008, October 3, 2008, October 9, 2008, October 23, 2008, December 10, 2008, and January 27, 2009.

The attached transcripts constitute undisputed evidence that Defendants have intentionally concealed sworn testimony that goes to the heart of this dispute, supports Plaintiff's multiple allegations, and eviscerates the Defendants' Motions to Dismiss. Counsel for Greenberg Traurig, Quarles & Brady, Deconcini McDonald Yetwin & Lacy, PC, Mayer Hoffman McCann P.C., MCA Financial Group Ltd., CBIZ Tax and Advisory Service, LLC, SMC Revocable Trust, Estate of Scott M. Coles, SM Coles LLC, Francine Coles, Ashley Coles, George Everette, Laura Martini, Chuck McLane, Christopher Olson, Phillip Sollomi, Howard Walder, Nechelle Wimmer, Burta "Bunny" Walder and Michael Denning have concealed from this Court material sworn testimony acquired during the SEC investigation.

Respectfully submitted this 25th day of March 2010.

**GOODMAN PA**

By s/ Grant H. Goodman (SBN 009463)
Grant H. Goodman
**Anchor Centre West**
2201 E. Camelback Road, Suite 350
Phoenix, AZ  85016
Telephone:  (602) 955-0208
Fax: (602) 538-4357
ggoodman@GoodmanAttorneys.com
granthgoodman@msn.com
Attorneys for Plaintiff Summit

**MEMORANDUM AND POINTS OF AUTHORITIES**

## I. INTRODUCTION

The claims in this case arise from a bank fraud and "Ponzi" scheme, supported, enabled, and furthered by Defendants. In their multiple Motions to Dismiss, Defendants failed to disclose numerous SEC transcripts that constitute material party admissions. With the exception of Counsel Dennis Wilenchik, whose client was not among those deposed during the SEC investigation, the other Defendants who filed Motions to Dismiss in this case have intentionally concealed critical and case dispositive transcripts and other information directly bearing on the allegations in the First Amended Complaint.

The SEC Transcripts of Mortgages Limited's ("Mortgages LTD") officers proves beyond any legitimate debate that these officers knew that Mortgages LTD was insolvent in 2007; yet these same officers breached fiduciary duties owed to Plaintiff's by withdrawing millions of dollars from Mortgages LTD to the detriment of creditor, Plaintiff. The SEC Transcripts confirm that Mortgages LTD's auditors engaged in accounting irregularities and failed to confirm the existence of promissory notes evidencing hundreds of millions of dollars in notes payable to Radical Bunny LLC ("Radical Bunny") purportedly made in 2006 and 2007. Exhibit 2A (the "Chess Report") identified in Michael Denning's SEC testimony reveals that there were accounting irregularities in audits conducted of Mortgages LTD dating back several years. The Chess Report demonstrates that SM Coles LLC failed to report approximately $310,000,000 in assets in the Chapter 11 Bankruptcy filing.

## II. ARGUMENT

### A. Defendants' Misleading Motions to Dismiss

Arizona Supreme Court Rule 41(e) provides that attorneys have an obligation to never "mislead the judge[] by any artifice or false statement of fact or law." Ethical Rule 3.3 requires attorneys to not knowingly "make false statement[s] of fact or law to a tribunal." Arizona Rules of Professional Conduct, Rule 3.3(a)(1) (2009).

The Arizona Supreme Court has adopted the American Bar Association's Standards for Imposing Lawyer Discipline, Standard 6.12, and has held that "suspension is generally appropriate when an attorney knowingly makes a false statement of material fact to or knowingly withholds material information from the tribunal." *In re Moak*, 205 Ariz. 351, 355-356, 71 P.3d 343, 347-348 (Ariz. 2003).

In this case, Attorneys for Defendants Christopher Olson and Rachel Schwartz-Olson, George and Mary Jane, Everette, Mike and Donna Denning, Nechelle and John Doe Wimmer, Phillip Sollomi, Jr. and Carolyn L. Sollomi filed Motions to Dismiss stating that Defendants' only relation to each other was having a common client or common employer. (Greenberg Traurig LLP Motion to Dismiss, DKT #63, Page 2, lines 5-6). This is not true. Depositions have come into Plaintiffs' possession demonstrating that (1) Defendants were well aware that Mortgages LTD was in the zone of insolvency as they continued to draw millions of dollars in violation of fiduciary duties owed to Plaintiff; (2) officers of Mortgages LTD knew of, and colluded in, securities fraud and racketeering; and (3) Scott Coles LLC committed bankruptcy fraud when it filed its Notice of Filing Schedules and Statement of Financial Affairs in Chapter 11 proceedings. (*See* Exhibit 6, attached hereto).

The SEC Transcripts attached as Exhibits 1, 2, 3, 4, 5, and 7, constitute party admissions that the officers of Mortgages LTD including Defendants Denning, Martini, Sollomi, Wimmer, Everette, knew that Mortgages LTD was insolvent in 2007. Despite this knowledge, Defendants withdrew millions of dollars from Mortgages LTD. The SEC Transcript testimony of Charles McLane shows that he and his firm Mayer Hoffman & McCann, P.C. engaged in accounting falsification. In addition to the concealed SEC testimony, other documents have been discovered revealing fraudulent bankruptcy filings. Defendants and their counsel knew of the existence of the depositions and documents presented here.

The Motions to Dismiss, omitting any reference to the SEC transcripts, constitutes an intentional misrepresentation to the court used to secure a final

4

judgment with prejudice. Defendants are using their Motions to Dismiss as a vehicle with which to argue the nonexistence of the very admissions contained in the SEC Transcripts. Essentially, Defendants attempt to avoid the discovery process in this case by avowing to the Court that the very documents and information within their possession do not exist. This is tantamount to intentional withholding of evidence.

At this point in the proceedings, the Court has not acted on Defendants' Motion to Dismiss. However, the Court should not permit officers of the court to violate their duty of candor to the tribunal, under Ethical Rule 3.3(a)(1), and assault the integrity of the judicial process without sanction. As the 9th Circuit has stated, "Rule 60(b) focuses not so much in terms of whether the alleged fraud prejudiced the opposing party but more in terms of whether the alleged fraud harms the integrity of the judicial process." *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1132-1133, 1995 U.S. App. LEXIS 20261,12 (9th Cir. 1995). More recently, this principle was summarized: "[p]rejudice is not an element of fraud on the court." *Dixon v. Comm'r*, 316 F.3d 1041, 1046, 2003 U.S. App. LEXIS 640, 12 (9th Cir. 2003).

Here, Defendants compromised the integrity of the judicial process. The Court should summarily deny their respective Motions to Dismiss. Then, pursuant to Federal Rules of Civil Procedure, Rule 11, the Court should sanction Defendants by awarding attorneys fees to Plaintiff for time spent responding to the frivolous Motions to Dismiss. *In re Savoy*, 181 Ariz. 368, 891 P.2d 236 (Ariz. 1995) (holding that ethical rule 3.3(a)(1) was violated when attorney made false statement of material fact to tribunal).

### B. The SEC Transcripts: Admissions Against Interest Establishing Intent to Engage in a Fraudulent Scheme

#### 1. SEC Testimony of Chief Information Officer George Everette

Chief Information Officer, George Everette, testified that in the last quarter of 2007, there was a "run on the bank" (the bank being Mortgages LTD) where multiple investors requested redemptions. (*See* Exhibit 1, Bates No. R-MTD-D/O 000554).

Moreover, Mr. Everette was uncomfortable with the number of "red flags" appearing at Mortgages LTD; in late 2007 and early 2008 Mortgages LTD was having difficulties in fulfilling delayed funding on the "Rightpath" loan which resulted in a 132 million dollar lawsuit. (*See* Exhibit 1, Bates No. R-MTD-D/O 000556). Mr. Everette testified that during the meltdown and redemption freeze, Scott Coles was hand-selecting which investors would get their money back, demonstrating that Scott Coles, along with other Mortgages LTD officers, knew and were concealing the company's collapse; "cherry picking" creditors for payment violates Defendant's fiduciary duties. (*See Ariz. Tile, L.L.C. v. Berger,* 2010 Ariz. App. LEXIS 14 (Ariz. Ct. App. Feb. 2, 2010). (*See* Exhibit 1, Bates Nos. R-MTD-D/O 000568-569).  While the loan commitments were breached, Mr. Everette received $234,016.54 from Mortgages LTD in the year and half before the company filed bankruptcy. (*See* Exhibit 1, Bates Nos. R-MTD-D/O 000576-000577; First Amended Complaint ¶ 64 DKT 68).

## 2.     Denning Knows of Securities Fraud and Racketeering

The President of Mortgages LTD, Michael Denning stated in his SEC testimony that things had gotten so bad at Mortgages LTD in 2007 that Scott Coles began selling off his own assets to bring cash into the business, presumably to cover Mortgages LTD's obligations funding commitments. (*See* Exhibit 2, Bates Nos. R-MTD-D/O 000576-000577).  New investors were solicited. They were not told of Coles' practice of selling assets. (*See* Exhibit 2, Bates Nos. R-MTD-D/O 000582). Yet, Robert Kant of Greenberg prepared two Private Offering Memorandums for Mortgages LTD/Radical Bunny on February 11, 2008 and in November and December 2007 which were reviewed and approved by Michael Denning. (*See* First Amended Complaint ¶ 25, DKT 68, 107 filed in this action).

Denning was aware of Mortgages LTD's dependence on the continuing receipt of hundreds of millions of dollars from Radical Bunny, which, in Denning's opinion,

did not comply with securities laws. (*See* Exhibit 2, Bates Nos. R-MTD-D/O 000587-000590). Mortgages LTD accepted $200,000,000 dollars from Radical Bunny to prop up the "Ponzi" scheme. *Id.*

Denning assisted the Chess Law Group to author a January 18, 2008 report. (*See* Exhibit 2, Bates Nos. R-MTD-D/O 000585). Mortgages LTD's Bankruptcy records show that Denning extracted $756,870.77 in the year and a half before the bankruptcy filing in breach of fiduciary duties owed to Summit. (*See* First Amended Complaint ¶ 68, DKT 68).

### 3. SEC Testimony of Vice President Nechelle Wimmer

Vice President of loan administration Nechelle Wimmer provided similar testimony to the SEC commission about Mortgages LTD liquidity issues. She stated that in 2007 the company suspended the profit sharing plan to conserve cash, so that Mortgages LTD could continue to fulfill its commitments to borrowers. (*See* Exhibit 3, Bates Nos. R-MTD-D/O 000626-000629). Despite the freeze in redemptions and loan originations and the obvious inability of Mortgages LTD to honor its financial commitments to its current borrowers, Ms. Wimmer withdrew $102,883 in the year and a half before the bankruptcy. (*See* First Amended Complaint ¶ 66, DKT 68).

### 4. SEC Testimony of Vice President Laura Martini

Laura Martini, a loan officer and Vice President of Mortgages LTD provided the following testimony. In 2007, Ms. Martini was aware of Mortgages LTD's financial position and testified that in October of 2007 loan originations stopped completely, because the company could not raise capital. (*See* Exhibit 4, Bates Nos. R-MTD-D/O 000645-000646). As early as May 2007, Ms. Martini was aware of the fact that a growing number of loans the company had made were effectively unfunded. *Id.* If new loans were not originated, Ms. Martini would not receive commissions. In the year and a half prior to the bankruptcy filing, Ms. Martini, whose base annual salary was $50,000 plus commissions, extracted $1,578,661 from

Mortgages LTD.  (*See* Exhibit 4, Bates Nos. R-MTD-D/O 000641-000642; First Amended Complaint ¶ 62, DKT 68).

### 5. Senior Vice President Phillip Sollomi's Testimony Regarding Mortgages LTD's Insolvency

Senior Vice President, Phillip Sollomi is responsible for originating, structuring, negotiating, and underwriting the loans. (*See* Exhibit 5, Bates Nos. R-MTD-D/O 000654-000655). He had been with the company since 1990. (*See* Exhibit 5, Bates Nos. R-MTD-D/O 000653).  According to Sollomi, his commissions in 2007, when the company was unable to meet obligations and had frozen the origination of new loans, were between ($4,000,000.00 to $5,000,000.00) four to five million dollars. (*See* Exhibit 5, Bates Nos. R-MTD-D/O 000656). In the fall of 2007, Coles said that the company's focus was on financial commitments that had already been made and that Mortgages LTD would not be making any other loans, because new investment dollars were not coming in. (*See* Exhibit 5, Bates Nos. R-MTD-D/O 000657-000661). Coles put a freeze on investor redemption requests in the summer of 2007 as liquidity froze. *Id.*  There were delays in making payments to borrowers because the borrowers were unable to pay subs and contractors. *Id.* Other investors, who had been promised the ability to redeem with notice, were not getting their money at all. *Id.*

During this same period of time, a closed door meeting took place between Scott Coles, Sollomi, and Martini.  During this meeting, Mr. Coles discussed the creation of a legally questionable new loan program intended to save Mortgages LTD from shutting its doors; the program further demonstrated the "Ponzi" nature of Mortgages LTD's business.  Mr. Solomi testified:

> Q:  (David Brown) In looking at Exhibit 111, was there any change in business or change in approach at the company that had been requested after the issuance of the Email, as far as you were aware?
> A:  (Phillip Sollomi) Well, after this Email was initiated?
> Q: Yes.
> A: Well, around the middle of January, he came up with the VTL Program. The Value-to-Loan Program.  That was a huge product change, in my opinion.

> Q: Tell me about that.
> A: Well, again, around early January, mid-January, Scott called Laura Martini and I into his office to roll out the value-to-loan Program. To discuss it, get our feedback, and then he was going to launch this program. So that's what he did. He laid out –
> Q: This is Scott we are talking about, by the way?
> A: Scott. Just Scott, Laura, Phil in his office behind closed doors. So he's rolling out this program. First of all, I don't even understand it. I've been there 17 years. I don't even get it, because Scott's using all these percentages and leveraging the pools, and more than 50 percent of the pools. But the main gist of the program that I couldn't understand or believe, nor endorse, was the fact that by leveraging these pools, he was putting the existing investors in those pools in a subordinate position.
>
> So he got done laying out the program, which he said would be the program that's going to save Mortgages LTD, and that it will keep us in business. And Laura's 100 percent behind this program. And he's going, well, you're awful quiet. I said, well, my mind is spinning here. I think you're a smart man, Scott. I think you'll get a legal opinion to see if this is even legal, but my concern is it's not morally or ethically correct. It's not the right thing to do to investors.
>
> So Laura got excited. Kind of a little bit aggressive with me. And he goes, no, Phil's got a right to voice his opinion. And he says, I promise you, I will get an opinion that it's legal from *Greenberg Traurig*, and I can assure you that this is morally and ethically correct.

(*See* Exhibit 5, Bates Nos. R-MTD-D/O 000654-000655).

### 6. The Chess Report: Evidence of Accounting Irregularities and Bankruptcy Fraud

The Chess Report, intentionally concealed by Defendants, is another critical document showing that Mortgages LTD auditor Chuck McLane and Mayer Hoffman McCann, P.C. engaged in accounting fraud and that Scott Coles LLC committed bankruptcy fraud when it filed its Notice of Filing Schedules and Statement of Financial Affairs in Chapter 11 Proceedings, which support Plaintiff's RICO allegations. (*See* Exhibit 2A, Bates Nos. R-MTD-D/O 000594-000610). The Chess Law Firm authored a Sponsor Report for Mortgage LTD on January 18, 2008. *Id.* The Chess report is startling on two levels.

First, paragraph 9(i) states:

> Scott M. Coles' 2006 unaudited financial statement shows annual income exceeding $20,000,000 and his unaudited January 16, 2008 statements for SMC Revocable Trust and SM Coles LLC shows a collective net worth exceeding $400,000,000.

(*See* Exhibit 2A, Bates Nos. R-MTD-D/O 000605-000606).

Yet in Bankruptcy papers filed only ten months after this report was authored, SM Coles LLC, in its amended Statement of Financial Affairs filed in the United States Bankruptcy Court for the District of Arizona, claimed only $90,000,000 in assets. (*See* Exhibit 6, Bates Nos. R-MTD-D/O 000675-000678). Either $310,000,000 in assets vanished in the ten month period or SM Coles LLC submitted fraudulent documents to the Bankruptcy Court.

Second, the Chess Report indicates that Defendants McLane and Mayer Hoffman McCann committed intentional accounting malfeasance in previous audits of Mortgages LTD. Paragraph (9)(e) of the Chess report states:

> "The manager and partner on the Mortgages LTD Account were both changed in 2007. Mayer subsequently identified several deficiencies in internal control that they consider to be material weakness (*E.g.*, recognizing origination fees over the term of the loan, recognition of a servicing asset when the loan is sold, accounting for loan transfer as a sale rather than a secured borrowing transaction). On review by this law firm and an independent CPA, many of the material weaknesses are issues which would have existed for years and could and should have been identified in prior years by the outside auditor. The change in manager and partner assigned to Mortgages LTD may have allowed for a more detailed audit process."

(*See* Exhibit 2A, Bates Nos. R-MTD-D/O 000605-000606).

The "Chess Report" was buried by Defendants.

### 7.     Charles McLane SEC Testimony.

Charles McLane was the director of CBIZ and shareholder of Mayer Hoffman McCann P.C. (*See* Exhibit 7, Bates Nos. R-MTD-D/O 000684-000685). In 2006 and 2007, Mr. McLane was the auditing partner to Mortgages LTD, replacing prior Mayer Hoffman McCann P.C. auditing partner Hodom due to irregularities in the 2005 audit, requiring a restatement in 2006. (*See* Exhibit 7, Bates Nos. R-MTD-D/O 000687-000688). As audit partner, McClane was responsible for overall supervision and

execution of the auditing process. (*See* Exhibit 7, Bates Nos. R-MTD-D/O 000689-000690).

McLane testified that the 2006 financials of Mortgages LTD showed notes payable to Radical Bunny in the amount of 128 million dollars. (*See* Exhibit 7, Bates Nos. R-MTD-D/O 000691-000698). In 2007, that amount had increased to 172 million dollars. *Id.* McLane stated that he confirmed these amounts by sending a confirmatory "letter" to Radical Bunny principal Tom Hirsch. *Id.* He took no further action regarding confirmation and therefore Mr. McLane could not state if these huge sums were confirmed through an examination of the purported promissory notes evidencing the debt. *Id.* Given the extraordinary size of the loans and the approximately 45 million dollar increase in the notes from 2006 and 2007, Mr. McLane had a duty to undertake additional investigation into the legitimacy of the figures provided by Mortgages LTD. His failure to do so establishes accounting fraud.

### III. CONCLUSION

Considered with testimony submitted with the Response to the Motion to Dismiss filed by the Individual Defendants (DKT 107, 109 and 131) (intentionally concealed), this is but the proverbial tip of the iceberg. This represents only highlights from the thousands of pages of SEC deposition transcripts that were reported in connection with the SEC investigation of Radical Bunny. It shows that Mortgages LTD's officers were well aware of Mortgages LTD's insolvency, while they continued to withdraw millions of dollars, to the detriment of Summit.

The lawyers for Greenberg Traurig, Quarles & Brady, Deconcini McDonald Yetwin & Lacy, PC, Mayer Hoffman McCann P.C., MCA Financial Group Ltd., CBIZ Tax and Advisory Service, LLC, SMC Revocable Trust, Estate of Scott M. Coles, SM Coles LLC, Francine Coles, Ashley Coles, George Everette, Laura Martini, Chuck McLane, Christopher Olson, Phillip Sollomi, Howard Walder,

Nechelle Wimmer, Burta "Bunny" Walder and Michael Denning have failed to disclose the sworn testimony discovered by Plaintiffs after the Defendants filed their Motions to Dismiss. Counsels' deliberate omission of this testimony is in violation of their ethical duties of candor to the Court. Arguably, each hoped that they could thwart justice by seeking dismissal of their claims with prejudice. This Court should not allow this kind of fraud upon the integrity of our judicial system and should exercise its inherent power to sanction by summarily rejecting all Defendants' Motions to Dismiss and awarding Plaintiff its attorneys' fees incurred in responding to the Motions to Dismiss.

Respectfully submitted this 25th day of March 2010.

**GOODMAN PA**

By s/ Grant H. Goodman (SBN 9463)
Grant H. Goodman
**Anchor Centre West**
2201 E. Camelback Road, Suite 350
Phoenix, AZ  85016
Telephone:  (602) 955-0208
Fax: (602) 538-4357
ggoodman@GoodmanAttorneys.com
granthgoodman@msn.com
Attorneys for Plaintiff Summit

**CERTIFICATE OF SERVICE**

I hereby certify that on March 25, 2010, I electronically transmitted the above pleading to the Clerk's Office using the CM/ECF filing system for filing and transmittal of a Notice of Electronic Filing to all parties that have entered an appearance in this matter as follows:

The Honorable Mary H. Murguia
United States District Court
Sandra Day O'Connor U.S. Courthouse
401 W. Washington St., SPC 53, Ste. 525
Phoenix, AZ  85003-2154
Murguia_chambers@azd.uscourts.gov


David B. Rosenbaum
Joseph N. Roth
Osborn Maledon PA
P.O. Box 36379
Phoenix, AZ  85067-6379
drosenbaum@omlaw.com
jroth@omlaw.com
kdourlein@omlaw.com
Attorneys for Defendant Greenberg Traurig


Kevin M. Downey (pro hac vice)
Ellen E. Oberwetter (pro hac vice)
Patrick Joseph Houlihan
Williams & Connolly, LLP
725 Twelfth Street, N.W.
Washington, DC  20005
kdowney@wc.com
eoberwetter@wc.com
phoulihan@wc.com
Attorneys for Defendant Greenberg Traurig


Kendall Douglas Steele
Jardine Baker Hickman & Houston, PLLC
3300 N. Central Ave., Ste. 2600
Phoenix, AZ  85012-3039
ksteele@jbhhlaw.com
kwoolsey@jbhhlaw.com
Attorneys for Defendants Mayer Hoffman McCann PC, Charles A. and Eileen McLane


Timothy J. Thomason
Mariscal Weeks McIntyre & Friedlander PA
2901 N. Central Ave., Ste. 200
Phoenix, AZ  85012-2705
tim.thomason@mwmf.com
Attorneys for Defendant MCA

David P. Waddilove
John C. Aisenbrey
Sharon W. Ng
Stinson Morrison Hecker LLP
1201 Walnut St., Ste. 2900
Kansas City, MO  64106
dwaddilove@stinson.com
sng@stinson.com
mismith@stinson.com
jaisenbrey@stinson.com
Attorney for Defendant CBIZ

Robert Gerald Schaffer
William George Voit
Lewis & Roca LLP
40 N. Central Ave.
Phoenix, AZ  85004-4429
Rschaffer@lrlaw.com
WVoit@lrlaw.com
Attorneys for Defendant Gerald Smith as Personal Representative of the Estate of Scott M. Coles and Trustee of the SMC Revocable Trust

Dennis Ira Wilenchik
Wilenchik & Bartness PC
2810 N. 3rd St., Ste. 103
Phoenix, AZ  85004
diw@wb-law.com
Attorneys for Defendant Zeleznak Family Trust, Defendants Zeleznak,

Jerome K. Elwell
Peter Joseph Foster
Warner Angle Hallam Jackson & Formanek PLC
3550 N. Central Ave., Ste. 1500
Phoenix, AZ  85012-2188
jelwell@warnerangle.com
pfoster@warnerangle.com
rec@warnerangle.com
Attorneys for Defendant Francine Coles

Stephen William Tully
Gordon & Rees
111 W. Monroe St., Ste. 1111
Phoenix, AZ  85003
Stully@gordonrees.com
ntanner@gordonrees.com
thoffmann@gordonrees.com
Attorneys for Defendants Denning, Everette, Wimmer, Olson, Sollomi

Gary Frank Urman
DeConcini McDonald Yetwin & Lacy PC
2525 E. Broadway Blvd., Ste. 200
Tucson, AZ  85716-5300
gurman@dmyl.com
Attorneys for Defendant DeConcini McDonald
Yetwin & Lacy PC

Efren A. Compean
Stephen J. Tully
Tomas Ortiz
Garrett & Tully
225 South Lake Ave., Ste. 1400
Pasadena, CA  91101
ecompean@garrett-tully.com
tortiz@garret-tully.com
stully@garrett-tully.com
Attorneys for Defendants Mayer Hoffman McCann PC,
Charles A. and Eileen McLane

Nicole France Stanton
Lauren Elliott Stine
Quarles & Brady LLP
One Renaissance Square
Two N. Central Ave.
Phoenix, AZ  85004-2391
Nicole.stanton@quarles.com
docketaz@quarles.com
lstine@quarles.com
Attorneys for Ashley Coles

Robert Coleman Warnicke
Thomas E. Littler
Warnicke & Littler, PLC
1411 N. 3rd St.
Phoenix, AZ 85004-1612
administrator@warnickelittler.com
Attorneys for Hirsh & Shah, CPA's, LLC;
Horizon Partners, LL; Harish and Jane Doe Shah;
Howard and Jane Doe Walder; Thomas and Jane Doe Hirsch


s/ Grant H. Goodman (SBN 009463)